This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39921

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PAUL A. CASARES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Erica Schiff, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Following a jury trial, Defendant Paul A. Casares was convicted of aggravated battery with a deadly weapon (firearm), contrary to NMSA 1978, Section 30-3-5(C) (1969); conspiracy to commit aggravated battery with a deadly weapon (firearm), contrary to NMSA 1978, Section 30-28-2 (1979); and possession of a firearm by a felon, contrary to NMSA 1978, Section 30-7-16(A) (2019, amended 2022). On appeal,

Defendant argues that the admission of propensity evidence related to his possible involvement in other shootings warranted a mistrial. For the following reasons, we reverse.

**BACKGROUND**

**{2}** Defendant, Angel Saiz, and Tyler Kelley shot at Agapito Araujo on Diamondback Road in Artesia, New Mexico (Diamondback Road shooting) and again on Highway 285 (Highway 285 shooting). Mr. Araujo was shot in the leg during the Diamondback Road shooting. In a statement to Detective Guevara, Mr. Araujo stated that he was unaware of his shooters' identities. However, after later learning that Defendant had been incarcerated, Mr. Araujo identified Defendant as one of the shooters.

**{3}** At trial, the State called as its first witness Mr. Araujo, who explained that he was not initially forthcoming about his shooters' identities because he feared for his life. Subsequently, Detective Guevara, who was originally assigned to investigate the shootings, testified that he eventually handed the investigation off to Deputy Aranda. The State later called Deputy Aranda and asked why that transfer took place. Deputy Aranda explained that a lot of shootings occurred in the Artesia area over the summer of 2020 (Artesia shootings). It was during the Artesia shootings investigation that law enforcement "interviewed a lot of the suspects and shooters. Some of the information related in those interviews led back to [Defendant]."

**{4}** The State then questioned Deputy Aranda in the following manner:

| | |
|---|---|
| Prosecutor: | Initially, Mr. Araujo was not consistent in his statements to law enforcement, is that correct? |
| Deputy: | Correct. |
| Prosecutor: | At some point something changed, so that we're here today. Correct? |
| Deputy: | Yes ma'am. |
| Prosecutor: | Now, do you know what that was? |
| Deputy: | [Defendant] and Angel Saiz were arrested. [Defendant] had an outstanding warrant, so he was arrested on the day I encountered him in August . . . a press release was done by the Eddy County Sheriff's Office on social media . . . . |
| Defense counsel: | Your honor. |
| Court: | [inaudible] objection. |
| Defense counsel: | We're going down a road that is not relevant . . . basically, they are bringing in other things that are not pertinent to this case, in order to make [Defendant] look bad. |
| Prosecutor: | And your Honor, [Defense counsel] multiple times has made a point of the fact that Mr. Araujo initially was not cooperative. So he opened the door in his opening statement . . . said there was inconsistency in his cross . . . . So he has repeatedly raised the factor or raised the issue of why Mr. Araujo was not fully cooperative initially, and so the answer to that question is Mr. Araujo's testimony. |

| | |
|---|---|
| Court: | If this question, if this testimony goes to that, the court will allow it. If it's veering from that, then I'll let [Defense counsel] renew his objection for relevance. |
| Prosecutor: | Yes your honor. So you said there was press releases about the arrest of, among other people, [Defendant]? |
| Deputy Aranda: | Yes ma'am. |
| Prosecutor: | Okay. And so following the press releases, what happened? |
| Deputy Aranda: | Uhm, [a task force agent] contacted Mr. Araujo and asked him if he wanted to cooperate with the investigation . . . , which he agreed to do, so myself and [another deputy] conducted an interview with Mr. Araujo. . . . . |
| Prosecutor: | Okay. And now you heard Mr. Araujo's testimony today. Was that consistent with what he told you in August? |
| Deputy Aranda: | Yes. |
| Prosecutor: | And did you ask him why he didn't give you that information in May? |
| Deputy Aranda: | Yes, he said he was in fear for his life and his mother's life as the individuals knew where he lives, and he resides with his mother and his father. |
| Prosecutor: | Okay. And to be clear, at the time that you had the conversation with him, [Defendant] and the other defendants were in custody? |
| Deputy Aranda: | Correct. |
| Prosecutor: | Okay. How is it that your violent crimes unit knew to contact Mr. Araujo after [Defendant] and Mr. Saiz were taken into custody? |
| Deputy Aranda: | It was just from information gathered that [Defendant] was involved with other shootings. From information that we were told we thought it'd be in our best interest to. |

**{5}**     Defense counsel here again objected, stating that "things are coming out here that have nothing to do with this. And they are using this to basically try and paint a picture of [Defendant]. I'm going to ask for a mistrial based on what the detective said about other." To address the motion, the district court called a sidebar conference. During the sidebar, defense counsel argued that the State's line of questioning was unnecessary to establish what they needed to, and would prejudice the jurors against Defendant. The State argued that defense counsel had opened the door by questioning witnesses as to why Mr. Araujo had changed his story and then attempted to suppress the answer to that inquiry. The recess for resolving the mistrial motion lasted approximately thirty-eight minutes.

**{6}**     After consideration, the district court denied Defendant's motion for mistrial and permitted the State to cure by eliciting testimony from Deputy Aranda that Defendant was never charged with, nor arrested for the Artesia shootings investigation.

## DISCUSSION

### I.    The Denial of Defendant's Motion for Mistrial Constituted Abuse of Discretion

**{7}** We review the district court's denial of a motion for mistrial for abuse of discretion. *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016. The district court abuses its discretion where it "acts in an obviously erroneous, arbitrary, or unwarranted manner, or when the decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* (internal quotation marks and citations omitted). The admission of propensity evidence is a nonconstitutional evidentiary error. *See id.* ¶ 20. When a nonconstitutional evidentiary error occurs, the harmless error standard of review mandates reversal only where there is a "reasonable probability" the inadmissible evidence contributed to the defendant's conviction. *Id.*

**{8}** Under Rule 11-404(B) NMRA, the admissibility of otherwise relevant evidence is limited because it is unfairly prejudicial to the accused. *State v. Ruiz*, 2001-NMCA-097, ¶ 13, 131 N.M. 241, 34 P.3d 630. Rule 11-404(B) prohibits propensity evidence where its purpose is "to prove the character of a person in order to show action in conformity therewith." *Ruiz*, 2001-NMCA-097, ¶ 13 (internal quotation marks and citation omitted). Use of propensity evidence carries the risk that the fact-finder may assign it more probative value than deserved and may "punish a bad person regardless of the evidence." *Id.* (internal quotation marks and citation omitted). Where offered for a purpose other than propensity, the court balances the evidence's prejudicial effect against its probative value. *See State v. Lovett*, 2012-NMSC-036, ¶ 32, 286 P.3d 265. Specifically, as to other *uncharged* propensity evidence, unfair prejudice is the risk that, notwithstanding any limiting instructions, "the jury . . . will draw unfavorable inferences about [a] defendant's propensity for criminal conduct." *State v. Kerby*, 2005-NMCA-106, ¶ 25, 138 N.M. 232, 118 P.3d 740.

**{9}** The issues we must address are: (1) whether the error in admitting the propensity evidence was harmless; and (2) whether the district court's remedy cured the resulting prejudice. We address each in turn.

## A.	The Error in Admitting the Propensity Evidence Was Not Harmless[1]

**{10}** "When a non[]constitutional evidentiary error occurs, the harmless error standard of review only [mandates] reversal [where] there is a 'reasonable probability' the inadmissible evidence contributed to [the d]efendant's conviction." *Hernandez*, 2017-NMCA-020, ¶ 20. This standard of review requires a case-by-case analysis. *Id.* "Reviewing courts are to evaluate all of the circumstances surrounding the error, including examining the error itself, the source of the error, the emphasis on the error, and whether the error was cumulative or introduced new facts." *Id.*

---

1We note that Defendant also contends on appeal that the felon-in-possession charge should have been severed from the other charges because the failure to sever allowed the jury to consider this charge in addition to the other propensity evidence, contributing to the cumulative prejudicial effect of the propensity evidence. However, this argument is unpreserved and we will not consider it further. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *see also State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.2d 493 (stating "[w]e generally do not consider issues on appeal that are not preserved below" (internal quotation marks and citation omitted)). Since we are reversing, Defendant may raise this issue for the district court to decide on remand.

**{11}** "Evidence of guilt separate from the error may be relevant but may not be the singular focus in determining whether the trier of fact was influenced by the error." *Id.* For many reasons it is improper for "overwhelming evidence" of guilt to be the singular focus in determining whether an error was harmless. *State v. Tollardo*, 2012-NMSC-008, ¶ 40, 275 P.3d 110 (internal quotation marks omitted). First, such a focus distracts from the appropriate central focus, which is whether there is a reasonable probability that the improper propensity evidence may have affected the jury's verdict. *Id.* Second, after a certain point, "an error becomes too great to condone as a matter of constitutional integrity and prosecutorial deterrence." *Id.* (internal quotation marks and citation omitted). Finally, for an appellate court to give excessive consideration to "overwhelming evidence" risks reweighing the evidence for or against guilt, and by doing so usurping the role of the jury. *Id.* (internal quotation marks omitted).

**{12}** The State argues that even if the evidence of guilt is not the sole consideration, it is nonetheless overwhelming. We decline to weigh or quantify the evidence in this case in light of the harmfulness of the propensity evidence at issue, which we discuss in our analysis below. Furthermore, even if the evidence of guilt were overwhelming, it should not be the "main determinant of whether an error was harmless." *Id.*

**{13}** Next, we consider the circumstances surrounding the admission of the propensity evidence. We first consider the issue to which the propensity evidence related. We then consider the source of the propensity evidence and the amount of emphasis placed on it. *See Hernandez*, 2017-NMCA-020, ¶ 20.

**{14}** In this case, the propensity evidence struck at the crux of a critical issue: whether Defendant shot at Mr. Araujo. Four statements in particular risked injecting prejudice as to that issue. First, Deputy Aranda stated that during the Artesia shootings investigation, he "interviewed a lot of the suspects and shooters. Some of the information related in those interviews led back to [Defendant]." Second, in response to the State's questioning, Deputy Aranda testified that "[Defendant] had an outstanding warrant." Third, the State asked Deputy Aranda: "[h]ow is it that your violent crimes unit knew to contact Mr. Araujo after [Defendant] and Mr. Saiz were taken into custody?" to which Deputy Aranda replied, "It was just from information gathered that [Defendant] was involved with other shootings." These statements went to a critical and highly disputed issue at trial: whether Defendant shot at Mr. Araujo. Therefore, the propensity evidence impermissibly allowed the jury to find that Defendant shot at Mr. Araujo because he was involved in other shootings in the Artesia area. *See id.* ¶ 21 (noting that improperly referenced evidence is not harmless when it goes to a critical and highly disputed issue at trial).

**{15}** The State also elicited the propensity testimony from a prejudicial source and placed a prejudicial amount of emphasis on the error. *See id.* ¶ 20 ("Reviewing courts are to evaluate . . . the source of the error [and] the emphasis on the error."). Propensity testimony was elicited from a prejudicial source when the State asked Deputy Aranda why Mr. Araujo was inconsistent in his statements to law enforcement about whether he knew the identities of his shooters. This elicited Deputy Aranda's response that Mr.

Araujo "was in fear for his life and his mother's life as the individuals knew where he lives, and he resides with his mother and his father." By this time, Mr. Araujo had already testified to such himself. Having Deputy Aranda reiterate Mr. Araujo's testimony served no other purpose than to place the investigating deputy's stamp of approval on Mr. Araujo's explanation of his own motives. Additionally, as described above, before the mistrial conference Deputy Aranda made multiple statements referencing Defendant's alleged involvement in other shootings. Moreover, after the mistrial conference, Deputy Aranda's further testimony once again called the jury's attention to Defendant's alleged involvement in those shootings. As such, throughout his testimony Deputy Aranda also placed his stamp of approval on the allegations that Defendant was involved in multiple other shootings. Therefore, the source of the propensity evidence added to the prejudicial effect of that evidence.

**{16}** Moreover, the State placed a prejudicial amount of emphasis on the error when it questioned Deputy Aranda about the propensity evidence. This was especially so when the State asked Deputy Aranda how it was that his *violent crimes unit* knew to contact Mr. Araujo after Defendant and Mr. Saiz were taken into custody, and Deputy Aranda answered, "It was just from information gathered that [Defendant] was involved with other shootings." In this instance, the State needlessly emphasized that Defendant was being investigated for separate, *violent* crimes. The State's line of questioning took no measures to avoid prejudicial emphasis.

**{17}** In considering the circumstances surrounding the admission of the propensity evidence, we observe that after the jury heard this propensity evidence the district court did not provide it with any curative instruction either before or after it recessed to decide how to proceed on the motion for mistrial. This recess lasted nearly thirty-eight minutes. This was ample time for the propensity evidence to take root and fester in the jurors' minds. *See State v. Armijo*, 2014-NMCA-013, ¶ 9, 316 P.3d 902 (stating that a court's *prompt* admonition to the jury to disregard inadmissible evidence sufficiently cures prejudice (emphasis added)); *see also Hernandez*, 2017-NMCA-020, ¶ 22 ("[A]fter . . . the inappropriate comment, the district court immediately excused the jury, without providing any sort of instruction, while the attorneys argued for or against a mistrial. . . . [T]he jury was excused for approximately nine minutes, which is ample time for the reference . . . to take root and fester in the jurors' minds.").

**{18}** As a result of our review of the circumstances surrounding the admission of the propensity evidence, we conclude that there was a reasonable probability the propensity evidence contributed to Defendant's conviction. This is especially true in this case, where Defendant was on trial for a shooting and the propensity evidence admitted at the trial implicated Defendant in other shootings in the Artesia area. We move now to consider the State's additional arguments urging this Court to find that the admission of this propensity evidence was harmless.

**{19}** The State argues that the jury, with its verdict, demonstrated that it was focused on the evidence and guided by the jury instructions. In support of its argument, the State notes that Defendant was originally charged with attempted first-degree murder and

conspiracy to commit first-degree murder but was convicted of lesser included offenses and acquitted of tampering with the evidence. In support, the State cites *State v. Mead*, a case in which we evaluated whether the district court abused its discretion by failing to sever where there were conflicting defenses. 1983-NMCA-055, ¶¶ 22, 25, 100 N.M. 27, 665 P.2d 289, *rev'd on other grounds by State v. Segotta*, 1983-NMSC-092, ¶¶ 1, 10, 100 N.M. 498, 672 P.2d 1129. The State's reliance on *Mead* is misplaced.

**{20}** In the context of propensity evidence, reversal is mandated where "there is a 'reasonable probability' the inadmissible evidence contributed to [the d]efendant's conviction." *Hernandez*, 2017-NMCA-020, ¶ 20. Moreover, this Court in *Mead* found the conviction of one defendant for solicitation and both for lesser included offenses was sufficient proof that the jury could determine *each defendant's guilt separately* such that there was no appreciable danger that the jury would convict both *solely* on the basis of their conflicting defenses. 1983-NMCA-055, ¶¶ 26, 28 (emphasis added). That here Defendant was convicted of lesser included offenses and acquitted of tampering with evidence does not in the same way show that there was no "*reasonable probability*" that the propensity evidence *contributed* to Defendant's conviction. It is also plausible that absent the propensity evidence the jury might have acquitted of the lesser crimes. Therefore, we are not persuaded that since the jury convicted Defendant of lesser included offenses and acquitted him of tampering with evidence, there was no reasonable probability that the propensity evidence here contributed to those lesser convictions.

**{21}** Finally, the State argues that the propensity evidence involved testimony that vaguely mentioned that Defendant's name was somehow connected with other shooting incidents. However, the comments were of a uniquely prejudicial nature under the particular circumstances present in this case. At a trial involving a shooting, the State elicited testimony that, during the investigation of other multiple shootings, law enforcement "interviewed a lot of the suspects and shooters. Some of the information related in those interviews led back to [Defendant]," and that "[Defendant] was involved with other shootings." *See Hernandez*, 2017-NMCA-020, ¶¶ 16, 26 (holding that the jury's thinking was "severely prejudiced" because of the "uniquely prejudicial" nature of the comment under the particular circumstances). When testimony is elicited that Defendant was involved in multiple other acts of such a similar nature, the references are not vague, but specific. Under the circumstances present here, we conclude that there was a reasonable probability that the admission of the propensity evidence contributed to Defendant's conviction, and the error in admitting this evidence was not harmless.

## B.    The District Court's Remedy Failed to Cure the Resulting Prejudice

**{22}** The procedure employed by the district court failed to cure the prejudice caused by the propensity evidence. In general, promptly instructing the jury to disregard inadmissible evidence cures any resulting prejudice. *Id.* ¶ 17 (recognizing an exception to the general rule when the prosecutor intentionally elicits the testimony and holding

that further analysis is required). However, the jury never received such an instruction here.

**{23}**   After hearing arguments from the defense and the State, the district court denied Defendant's motion for mistrial and permitted the State to cure by allowing Deputy Aranda to testify that Defendant was never charged with, nor arrested for, the Artesia shootings investigation. The fact that the district court permitted Deputy Aranda to testify that Defendant had never been charged or arrested did not remedy the risk of prejudice with which Rule 11-404(B) is concerned. The jury still heard and, presumably considered (because it had not been instructed otherwise) that law enforcement investigation revealed that, although not charged or arrested, Defendant was involved in other shootings in the area. This evidence was especially prejudicial in this case, as we mentioned previously, because Defendant was on trial for a shooting. Therefore, we conclude that the curative action was insufficient and that the district court erred in denying Defendant's motion for mistrial.

**{24}**   The denial of Defendant's motion for mistrial and attempted cure, which permitted the admission of the propensity evidence resulted for the reasons discussed above, in a reasonable probability that the propensity evidence contributed to Defendant's convictions in this case.

**{25}**   Additionally, as one of several reasons the State contends that Defendant was not prejudiced by the propensity evidence, the State argues that Defendant did not request a curative instruction, citing *Hernandez*, 2017-NMCA-020, ¶ 12. However, *Hernandez* highlights why a mistrial should have been granted in this case. Here, as in *Hernandez*, the prosecutor argued that a mistrial was not warranted and requested a curative instruction. *See id.* ¶¶ 12, 26 (holding that the district court abused its discretion in failing to grant the defendant's motion for mistrial where "[t]he prosecutor . . . argued that a mistrial was not warranted [and] asked for a curative instruction"). Notwithstanding that it was the State, and not Defendant, who suggested a curative instruction, this Court in *Hernandez* held that since that instruction was insufficient, there was a reasonable probability that the improper evidence prejudiced the jury's thinking. *See id.* ¶ 26. Here, we are presented with a similar situation. In this case, instead of a curative instruction, the district court attempted to cure the prejudice resulting from admission of propensity evidence by having Deputy Aranda testify that despite Defendant being linked through investigation to other shootings, Defendant was not arrested or charged for those. For the reasons discussed above, we have concluded that this curative action was insufficient. Accordingly, the fact that Defendant did not request a curative instruction does not detract from our conclusion that the curative action employed was insufficient.

**{26}**   For the foregoing reasons, we hold that (1) the State intentionally elicited improper propensity evidence; (2) permitting the State to elicit testimony that Defendant was never charged with, nor arrested for, the Artesia shootings investigation failed to cure the resulting prejudice; (3) there is a reasonable probability that the improper propensity evidence prejudiced the jury's thinking and contributed to Defendant's

convictions; (4) admission of the propensity evidence was not harmless; and (5) the district court abused its discretion when it failed to grant Defendant's motion for a mistrial.

**CONCLUSION**

{27}    For the reasons set forth above, we reverse Defendant's convictions. We remand for a new trial consistent with this opinion.

**{28}    IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**