## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2015-NMCA-083**

**Filing Date:  May 28, 2015**

**Docket No. 32,413**

**MARGARET M.M. TRACE,**

        **Worker-Appellee,**

**v.**

**UNIVERSITY OF NEW MEXICO
HOSPITAL, Self-Insured,**

        **Employer/Insurer-Appellant.**

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Gregory D. Griego, Workers' Compensation Judge**

Margaret M. McNamara Trace
Albuquerque, NM

Pro Se Appellee

Paul L. Civerolo, LLC
Paul L. Civerolo
Albuquerque, NM

for Appellant

## OPINION

**VIGIL, Judge.**

**{1}** This is a workers' compensation case which presents us with a question of first impression: whether the appointment of a case manager for ongoing coordination of health care services by a workers' compensation judge (WCJ) constitutes a "litigation expense" in connection with a proceeding before the Workers' Compensation Administration (WCA), thereby exempting the case manager's fee from the Procurement Code. We conclude that such services do not constitute a "litigation expense" and reverse the order of the WCJ to the contrary.

1

# I.  BACKGROUND

{2}     Worker was a registered nurse, working the night shift at University of New Mexico Hospital when she injured her back while lifting and turning a patient on October 5, 1994. On September 1, 1995, Worker filed a claim with the WCA against University of New Mexico Hospital and its insurer, New Mexico Risk Management (collectively Employer). From the beginning the case was combative. There was disagreement regarding the compensable injuries, allegations that the employer unilaterally changed treating physicians, that Employer improperly refused payment for necessary medical services, that Employer's agent interfered with the doctor-patient relationship, that medical services were unjustifiably curtailed or terminated, and that compensation benefits were improperly curtailed.

{3}     Trial was finally held on May 7-8, 1996, before WCJ Wiltgen, who entered a compensation order on June 3, 1996, concluding that as a direct and proximate result of the October 1994 accident, "Worker suffered an injury to her low back with additional effects on her shoulder, elevated blood pressure and emotional overlay." WCJ Wiltgen further found that "Worker's present condition and disability are permanent" and that Worker had "continuing need for medical care of her job-related injuries including psychological treatment."

{4}     Worker asserts that after entry of the compensation order, Employer's adjuster "continued to deny various treatments and medications" and that "Worker had increasing pain; some symptoms related to the previous injuries, and other new symptoms." Worker asserts that there were disputes between Worker's attorney and Employer's adjuster and the nurse case manager, as well as a number of claims, for exacerbations or new injuries "due to the denial of care and medical bills," and complaints for a "pattern of bad faith and unfair claims processing." Consequently, there were additional mediation conferences and hearings before the WCA, with the result that on October 27, 1999, WCJ Wiltgen appointed Ms. St. Martin as "independent nurse case manager" to "coordinate future medicals and treatment and act as nurse case manager."

{5}     Additional claims, responses, and motions followed, and issues remained unresolved. Following another mediation conference in December 2003, the parties agreed that Ms. St. Martin would pick a physician to conduct an independent medical examination. Following the independent medical examination and Ms. St. Martin's review, she determined that an independent medical panel should be convened. WCJ Wiltgen retired, and the case was reassigned to WCJ Griego in January 2004.

{6}     Worker filed an amended complaint on April 27, 2004. Following additional hearings, discovery, and the independent medical panel review, a final hearing on the April 27, 2004 amended complaint was set. The final compensation order, filed on February 22, 2006, determined that Worker suffered multiple injuries as a result of the 1994 accident, and that medical treatment, treatment modalities, and alternative therapies "may be necessary in the future," which "will be authorized in collaboration with the treating physician and nurse

2

case manager." The compensation order further ordered that "Ms. . . . St. Martin shall continue to act as the court ordered nurse case manager concerning [Worker's] work related injuries[.]"

**{7}**     In 2012, Employer moved that Ms. St. Martin be discontinued from serving as the court-appointed nurse case manager because her employer's contract with the WCA had expired, and Employer asserted, her continued appointment violated the Procurement Code. WCJ Griego denied the motion, on the basis that the Procurement Code "does not apply to Administrative/Court Ordered Decrees." Employer moved for reconsideration, and at the hearing WCJ Griego expressed his understanding that because Ms. St. Martin's appointment was court ordered, it qualified as a litigation exemption under the Procurement Code. WCJ Griego therefore denied the motion in a memorandum opinion reasoning:

> Services can be directed to be paid by Risk Management under the Workers' Compensation Act to providers who have not entered into a contract with State Risk Management under the procurement code. For example, professional services to a worker from an attorney or a physician can be ordered paid by court order. It is not necessary for those services to be provided under a contract under the procurement code.

> There is no question that the procurement code would be applicable if State of New Mexico were voluntarily providing services without intervention of the administration. However, the distinguishing characteristic here is that the services being provided are by direction by court order and not being voluntarily provided by Risk Management.

Employer appeals.

## II.     DISCUSSION

**{8}**     Employer makes two arguments on appeal: First, the WCA has a statutorily and administratively created system of case management and a WCJ cannot unilaterally order case management by circumventing the system. Second, the WCJ's order exceeds the WCJ's authority and violates the Procurement Code because the code requires a contract for professional services.

**{9}**     In response, Worker argues that Employer did not preserve the issues on appeal. Worker reasons that Employer has complied with Ms. St. Martin being the court-appointed case manager for fifteen years without incident, and this appeal is the first time Appellants have raised the issue. Worker also argues that the WCJ's order falls within the Procurement Code's litigation exemption.

**{10}**     We first address Worker's preservation concerns, then we examine the WCA and the Procurement Code.

## A.    Preservation

**{11}**    "To preserve a question for review it must appear that a ruling or decision by the [tribunal] was fairly invoked[.]" Rule 12-216(A) NMRA. The principal purpose of this rule is to alert the trial judge to the claimed error, giving the trial court an opportunity to correct the matter. *Madrid v. Roybal*, 1991-NMCA-068, ¶ 7, 112 N.M. 354, 815 P.2d 650. Worker argues that Employer failed to invoke a ruling by the WCJ in order to preserve its argument on appeal. We disagree.

**{12}**    Following the initial August 29, 2012 order, Employer made a motion to reconsider the order continuing St. Martin as the nurse case manager. In its motion, Employer asserted that the appointment of St. Martin without a contract violates the Procurement Code. WCJ Griego then held a hearing to address the controversy of St. Martin's status as the nurse case manager. All parties had the opportunity to address their concerns at the hearing. After hearing Employer's argument again that the August 29, 2012 order violates the Procurement Code, WCJ Griego disagreed and reaffirmed his ruling.

**{13}**    We therefore conclude that Employer alerted the WCJ to the asserted error it now argues on appeal and that the issue was properly preserved for appellate review.

## B.    Standard of Review

**{14}**    Our review requires us to examine the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013), NMSA 1978, § 52-4-3 (1990), regarding case management for health care services, and NMSA 1978, § 13-1-30 (2005) and NMSA 1978, § 13-1-98 (2013), of the Procurement Code. "We apply de novo review to interpret the meaning of a statute." *Jones v. Holiday Inn Express*, 2014-NMCA-082, ¶ 10, 331 P.3d 992. "When engaging in statutory construction, our primary concern is to determine and give effect to legislative intent." *Id.* (internal quotation marks and citation omitted). "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Faber v. King*, 2015-NMSC-___, ¶ 9, __ P.3d ___ (Nos. 34,204 and 34,194, Mar. 12, 2015) (alteration, internal quotation marks, and citation omitted). We also consider the statute's function in the comprehensive legislative scheme. *Id.*

## C.    Workers Compensation Act

**{15}**    The Act requires the WCA to establish a "case management" system providing for "the ongoing coordination of health care services provided to an injured or disabled worker[.]" Section 52-4-3(A)-(B). Thus, in providing ongoing coordination of health care services, case managers may be used for developing a treatment plan, monitoring the treatment, and the injured worker's progress, determining whether other health services are appropriate and cost-effective, and formulating a plan for the injured worker to return to

4

work. Section 52-4-3(B).

{16}    Further, the Act directs that the WCA "shall contract with an independent organization" to assist with the administration of the case management system. Section 52-4-3(C). The administrative rules of the WCA define a "contractor" as "any organization that has a legal services agreement currently in effect with the [WCA] for the provision of utilization review or case management[.]" 11.4.7.7(L) NMAC (12/31/2011). When case management is required, "The WCA will assign cases to its contractor for case management, as provided by the contract in effect." 11.4.7.14(G)(1)(a) NMAC (01/14/2005)[1] and when the WCA refers a case to a case manager, "the WCA shall pay for the case management services pursuant to the contract." 11.4.7.14(G)(1)(e)(i) NMAC (01/14/2005).

{17}    The plain language of the statute demonstrates that the Legislature intended the case manager to be a contractor with a contract in effect. The administrative rules implement this intent by creating a framework requiring case managers to be contractors who are paid as provided in the contract. In this case, the contract with Ms. St. Martin's employer expired. We now turn to whether WCJ Griego could order that Ms. St. Martin continue as Worker's case manager in the absence of a contract under the Procurement Code.

## D.    Procurement Code

{18}    The Procurement Code applies to all expenditures by state agencies for the procurement of goods and services from private entities, unless the Procurement Code itself provides otherwise. Section 13-1-30. Here, the WCA requires a contract for case management services and the Procurement Code requires a contract for any services, unless otherwise provided. The only exception which the Worker asks us to consider, and the only exception relied on by WCJ Griego is the litigation exemption under Section 13-1-98(R). This provision of the Procurement Code exempts:

> contracts and expenditures for legal subscription and research services and litigation expenses in connection with proceedings before administrative agencies or state or federal courts, including experts, mediators, court reporters, process servers and witness fees, but not including attorney contracts[.]"

Section 13-1-98(R).

{19}    We are therefore asked to conclude that the fee of a case manager, responsible for the ongoing coordination of health care services provided to an injured or disabled worker, constitutes a litigation expense in connection with a WCA proceeding because the case

---

[1]11.4.7.14 NMAC was amended in 2013. We apply the administrative rules that were in effect when the order was entered in 2012.

5

manager is appointed by a WCJ. We decline the invitation on the basis that the services provided by a case manager under the WCA are not incurred "in connection with" litigation. Rather, such fees are incurred following a determination that a worker is injured or disabled and entitled to benefits under the WCA, and ongoing coordination of the healthcare services is required. Stated another way, while a case manager's fee may be the consequence of litigation, such fees are not an expense of litigation.

**{20}** In this case, Ms. St. Martin has served as Worker's case manager since 1999, and she has acquired substantial knowledge about Worker's case, her issues, and her medical history. Continuing her services seems to be the most efficient means for coordinating Worker's future care. In addition, we note that since Ms. St. Martin became involved as Worker's case manager, the disputes between Worker, Employer, Employer's insurance adjusters, and Worker's medical providers seem to have significantly resolved. This may very well be the reason why WCJ Griego wished that her services continue. These are all excellent reasons for seeking an amendment to the appropriate statutes. However, that is not our prerogative. Nor can a WCJ exceed his statutory authority. *See Jones*, 2014-NMCA-082, ¶ 9 (stating that workers' compensation courts are tribunals of limited and special jurisdiction and have only such authority as has been conferred on them by statute).

**{21}** For the foregoing reasons, we reverse the WCJ's order appointing Ms. St. Martin to continue as Worker's case manager.

**CONCLUSION**

**{22}** The order of the WCJ is reversed.

**{23} IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**J. MILES HANISEE, Judge**

6