This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                             **No. A-1-CA-31243**

**JOHN ERIC OCHOA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mike Murphy, District Judge**

Hector H. Balderas, Attorney General
Sri Mullis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     This case comes to us on Defendant's motion to recall mandate and to address the five remaining issues in his appeal in light of the Supreme Court's opinion in *State v. Ochoa*, 2017-NMSC-031, 406 P.3d 505, which reversed this Court's 2014 decision reversing Defendant's convictions for violation of his constitutional right to a speedy trial. *See State v. Ochoa*, 2014-NMCA-065, 327 P.3d 1102.

{2}     Defendant was convicted of one count of interference with communications, contrary to NMSA 1978, Section 30-12-1 (1979) and two counts of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13 (2003), stemming from allegations that Defendant engaged in sexual abuse of his daughter, EO. For the following reasons, we affirm.

{3}     Defendant raises the following issues: (1) that the district court denied Defendant his constitutional right to present a defense when it prohibited him from presenting expert testimony and permitted the State to put on its own expert; (2) that the district court erred in denying Defendant's motion for a severance; (3) that the State failed to disclose EO's recantation; (4) that the district court erred in refusing to instruct the jury on unlawfulness as an element of CSCM; and (5) that as a result of the State's failure to instruct the jury on the issue of unlawfulness, the State failed to present sufficient evidence to support Defendant's convictions for CSCM. Because this is a memorandum opinion and the parties are familiar with the facts and

procedural posture of the case, we set forth only such facts and law as are necessary to decide the merits.

**BACKGROUND**

{4}     Defendant was charged in an indictment with sixteen felony and misdemeanor counts relating to alleged acts of sexual abuse of four of his children—JD, KO, IO, and EO—in April and May 2008. The State filed a nolle prosequi on three counts prior to trial: two counts of CSCM of IO and one count of attempted criminal sexual penetration of EO. After a trial on the remaining thirteen counts, the jury found Defendant guilty of two counts of CSCM of EO and one count of interference with communications. The jury either acquitted or hung on the remaining ten counts. Defendant appeals.

{5}     Because this is a memorandum opinion, additional factual and procedural background is provided in our analysis as required.

**DISCUSSION**

**I.     The District Court Did Not Deny Defendant His Constitutional Right to Present a Defense**

{6}     Defendant contends that "[i]n excluding Dr. [Alexander J.] Paret's, [Ph.D.] testimony concerning the safehouse interviews, including the leading questions used and the resulting suggestibility-evidence supporting the theory of defense, the

3

[district] court abused its discretion and denied [Defendant] his fundamental right to due process and a fair trial." In addition, Defendant argues that the error in excluding Dr. Paret's testimony was "further compounded when it erroneously allowed Detective Irma Palos of the Las Cruces, New Mexico Police Department, to offer her unqualified opinion that in her training and experience it is not unusual for children to fail" to make full disclosures. Finally, Defendant argues that even assuming the district court correctly excluded Dr. Paret from testifying, it should have allowed Defendant additional time to find a new expert.

**A.     The District Court Did Not Abuse Its Discretion**

{7}     Rule 11-702 NMRA provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Three requirements must be satisfied for expert testimony to be admissible under Rule 11-702: (1) that the expert be qualified; (2) that the testimony be of assistance to the trier of fact; and (3) that the expert's testimony be about scientific, technical, or other specialized knowledge with a reliable basis. *See State v. Alberico*, 1993-NMSC-047, ¶¶ 43-45, 116 N.M. 156, 861 P.2d 192. "The admission of expert testimony lies in the discretion of the trial court." *Loper v. JMAR*, 2013-NMCA-098,

4

¶ 18, 311 P.3d 1184. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244

{8} "Under Rule 11-702, a witness must qualify as an expert in the field for which his or her testimony is offered before such testimony is admissible." *Id.* ¶ 26 (internal quotation marks and citation omitted). "In order to testify, it must appear that an expert witness has acquired sufficient knowledge, skill, training, or experience that such testimony will aid the fact[-]finder, but no set criteria can be laid down to test such qualifications." *Id.* (internal quotation marks and citation omitted). "The use of the disjunctive 'or' in Rule 11-702 permits a witness to be qualified under a wide variety of bases, knowledge, skill, experience, training, or education, and underscores that broad discretion intentionally is given to the [district] court to determine whether expert testimony will assist the trier of fact." *Id.* (internal quotation marks and citation omitted).

{9} Here, Dr. Paret testified that he was trained in how to apply research in forensic psychology. Dr. Paret employed this training in his work at Clinical Forensic Neuropsychological Associates of New Mexico (CFNANM) as a specialist in providing expert testimony and evaluations concerning competency to stand trial, amenability to treatment, as well as assessing for dangerousness in children and

adults. Dr. Paret also testified that he worked for four-and-a-half years at the Intensive Crisis Counseling Program (ICCP) in Orlando, Florida, which was designed to help children who had allegedly been sexually abused, where he received six months of intensive training in performing interviews with children who had allegedly been sexually abused using the "cognitive interviewing technique[.]" While working at ICCP, Dr. Paret conducted over four hundred cognitive interviews of children who allegedly suffered sexual abuse. However, Dr. Paret conceded that during his time at CFNANM, he had never performed a safehouse interview, had never testified as an expert witness in safehouse interview techniques in any state, and had never previously engaged in a record review of safehouse interviews prior to Defendant's case. Dr. Paret also conceded that he had never received training, researched, or published scholarship in the area of safehouse interviewing techniques, and that neither his master's thesis nor his Ph.D. dissertation concerned cognitive or safehouse interviewing techniques.

{10}    The district court ruled that while qualified to render opinions on the matters of competency, dangerousness, and amenability to therapy, Defendant failed to establish that Dr. Paret was qualified to render opinions on safehouse interview techniques, with which he was unfamiliar, never studied, and had not employed. Further, the district court also found, because Dr. Paret had not conducted a

6

safehouse-type interview since 2002, it was not a subject of his expertise to critique the particular safehouse interviews conducted in Defendant's case. Under these facts, the district court's determination that Dr. Paret was not qualified to testify as an expert in safehouse interview techniques was not clearly contrary to logic and the facts and circumstances of the case. We therefore conclude that the district court did not abuse its discretion excluding the testimony of Dr. Paret from trial.

{11} We also conclude that the district court did not abuse its discretion in permitting Detective Palos to render the lay opinion that based on her training and experience, it is not unusual for children to fail to make full disclosures. Opinion testimony by a lay witness is "rationally based on the witness's perception" and is "not based on scientific, technical, or other specialized knowledge." Rule 11-701(A), (C) NMRA. To lay a foundation for her opinion, the State elicited testimony from Detective Palos. Detective Palos testified that she had received training as a forensic interviewer for physically and sexually abused children using the CornerHouse safehouse interview method and personally conducted the safehouse interview of JD. Detective Palos testified that she "had also received other training. I don't know right off the top of my head, but I attend any training that I possibly can regarding . . . sexual or physical abuse." Defendant argues that Detective Palos's statement cannot constitute expert testimony under Rule 11-702. The State argues that the Detective's testimony was

7

admitted as lay witness opinion testimony, not expert testimony. It appears from the record that the district court accepted Detective Palos's opinion testimony as a lay witness. Defendant has provided us with no authority to demonstrate that the district court erred when it considered Detective Palos's statement as lay opinion testimony in light of her particular experience as a police officer and forensic interviewer.

{12}     Under these facts, Detective Palos' opinion that "[n]o, it is not unusual for a child to not disclose fully what happened or what they experienced" during an interview was not inadmissible for lack of foundation. Accordingly, we conclude that the district court did not abuse its discretion in admitting the opinion testimony of Detective Palos.

**B.      The District Court Did Not Abuse Its Discretion in Denying Defendant's Request for Extra Time to Find a New Expert Witness**

{13}     "The trial court has broad discretion in granting or denying a motion for a continuance, and absent a demonstrated abuse resulting in prejudice to the defendant, there is no basis for reversal." *State v. Salazar*, 2006-NMCA-066, ¶ 21, 139 N.M. 603, 136 P.3d 1013 (internal quotation marks and citation omitted). "An abuse of discretion is a ruling that is clearly against the logic and effect of the facts and circumstances of the case." *State v. Gonzales*, ___-NMCA-___, ¶ 32, 406 P.3d 534, (internal quotation marks and citation omitted), *cert. denied*, 2017-NMCERT-___ (No. S-1-SC-36577,

Aug. 15, 2017). "[T]he burden of establishing an abuse of discretion rests with the defendant." *State v. Sanchez*, 1995-NMSC-053, ¶ 17, 120 N.M. 247, 901 P.2d 178.

**{14}** In reviewing the denial of a request for a continuance, appellate courts consider the following factors: "(1) the length of the requested delay; (2) the likelihood that a delay would accomplish the movant's objectives; (3) the existence of previous continuances in the same matter; (4) the degree of inconvenience to the parties and the court; (5) the legitimacy of the motives in requesting the delay; (6) the fault of the movant causing a need for the delay; and (7) the prejudice to the movant in denying the motion." *Gonzales*, ___-NMCA-___, ¶ 33.

**{15}** Considering these factors in light of the facts of this case, we conclude that the district court did not abuse its discretion in denying Defendant's request for additional time to find a new expert witness. First, Defendant did not specify how much time he needed to find a new expert. However, at the March 8, 2010 trial setting, when the State first raised the issue of Dr. Paret's qualifications, defense counsel stated that "[w]hen we left the trial in October, I spoke with the State regarding Dr. Paret, and it was my understanding that they were not going to challenge him as an expert. If I had thought they were going to do that, I would have brought in Dr. Maxann Schwartz, [Ph.D.], Dr. Paret's co-worker on this." Dr. Schwartz had been listed on Defendant's witness list since December 1, 2008. From these facts, we glean that if Defendant

9

would have brought in Dr. Schwartz to replace Dr. Paret, the delay resulting from a continuance to retain and prepare Dr. Schwartz for trial would likely have been minimal, since she was apparently aware of and familiar with the case. As a result, this factor weighs in favor of granting Defendant's request for additional time.

{16}    Second, the objective of Defendant's request for additional time was to find a new expert witness to testify on the issue of safehouse interviewing technique who would satisfy the district court's required qualifications. However, there is no indication that the district court would find the new expert qualified to testify. As a result, this factor weighs against granting Defendant's request.

{17}    Third, and as alluded to by the district court, multiple continuances (requested by Defendant and the State) and rescheduling of the trial setting had been permitted, resulting in significant delay in bringing Defendant's case to trial. As a result, this factor weighs against granting Defendant's request for additional time.

{18}    Fourth, in denying Defendant's request for additional time, the district court reasoned that Defendant had filed four motions to dismiss on speedy trial grounds, Defendant had been "in jail a long time[,]" and that trial had been postponed multiple times based on "unusual" circumstances. These facts support a conclusion that the degree of inconvenience to both the parties and court as a result of granting

10

Defendant's request would have been high under the circumstances. As a result this factor weighs against granting Defendant's request for additional time.

**{19}** Defendant represented to the district court at the March 8, 2009 trial setting, that it was his original belief that the State was not going to challenge the qualifications of Dr. Paret. This created a legitimate reason to request additional time. As a result, the fifth and sixth factors weigh in favor of granting Defendant's request for additional time.

**{20}** Finally, with regard to prejudice, Defendant argues that it was "incumbent" on the district court to allow a continuance under the circumstances, citing *March v. State*, 1987-NMSC-020, 105 N.M. 453, 734 P.2d 231, and arguing that although the "denial of a motion for a continuance rests in the sound discretion of the court, . . . a defendant has a fundamental, constitutional right to due process of the law" to establish his defense. This argument is unpersuasive. In its May 5, 2010 ruling, in which the district court found Dr. Paret unqualified to testify as an expert at trial, the district court did not preclude an otherwise qualified expert from testifying on proper safehouse interviewing techniques. Rather, the district court's ruling left Defendant free to retain a new expert prior to the commencement of trial on May 17, 2010. Moreover, we reemphasize that at the March 8, 2010 trial setting, Defendant stated that it would have been possible to substitute Dr. Schwartz for Dr. Paret, who had

11

been listed on Defendant's witness list since December 1, 2008, and was "Dr. Paret's co-worker on this." Under these facts, we find the prejudice to Defendant as a result of the denial of his request for additional time was low. As a result, this factor weighs against granting Defendant's request for additional time.

{21} We conclude that the district court's denial of Defendant's request was not against the logic and effect of the facts and circumstances of the case, and therefore did not result in an abuse of discretion.

**II.     The District Court Did Not Err in Denying Defendant's Motion to Sever**

{22} Defendant claims that the district court erred in denying his motion to sever counts that involved the different victims, times, and circumstances under Rule 5-203(C) NMRA ("If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants by the filing of a statement of joinder for trial, the court may order separate trials of offenses, grant a severance of defendants, or provide whatever other relief justice requires."). Because of the district court's ruling, the four Ochoa children testified at Defendant's trial. As a result, Defendant contends that without severance of the counts, "the jury would believe [that] if he did one act, he must [have been] guilty of the other acts" resulting in extreme prejudice.

{23} Additionally, Defendant contends, even assuming evidence of the offenses involving the different victims in the case was admissible in separate trials under Rule

12

11-404(B)(2) NMRA (providing that evidence of crimes, wrongs, or other bad acts of a party "may be admissible [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"), the probative value of the evidence was substantially outweighed by the danger of prejudice under Rule 11-403 NMRA (stating that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). This, Defendant argues, is because "[c]ases involving alleged child sexual abuse inherently appeal to the passions of the jury."

{24} New Mexico appellate courts "review a [district] court's denial of a severance motion for an abuse of discretion." *State v. Lovett*, 2012-NMSC-036, ¶ 10, 286 P.3d 265. "One test for abuse of discretion in a failure to sever case is whether prejudicial testimony, inadmissible in a separate trial, is admitted in a joint trial." *Id.* ¶ 11 (alterations, internal quotation marks, and citation omitted). We assume, without deciding, that the testimony of the children would not be cross-admissible in separate trials limited to offenses for each child, and that the district court therefore abused its discretion in denying Defendant's motion for severance. But "[e]ven when the trial court abuses its discretion in failing to sever charges, appellate courts will not reverse unless the error actually prejudiced the defendant." *State v. Gallegos*, 2007-NMSC-

13

007, ¶ 18, 141 N.M. 185, 152 P.3d 828; *see State v. Garcia*, 2011-NMSC-003, ¶ 16, 149 N.M. 185, 246 P.3d 1057 ("The decision to grant a severance motion lies within the [district court] judge's discretion and will not be overturned on appeal unless the joinder of offenses results in *actual* prejudice against the moving party."). The moving party "bears the burden of establishing that he [or she] was actually prejudiced by a failure to sever." *Id.*

{25} We therefore proceed to address whether Defendant was actually prejudiced as a result of the failure to sever; or, in other words, whether denial of his motion to sever constituted a harmless error. *See Gallegos*, 2007-NMSC-007, ¶¶ 37-38.

{26} In the context of an error in denying a motion to sever, the error is harmless "when there is no reasonable probability the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶¶ 36, 275 P.3d 110. The central inquiry of "whether an error was likely to have affected the jury's verdict" is required in a harmless error review on a case-by-case analysis. *See id.* ¶¶ 42, 44. The courts are guided by the following non-exhaustive list of factors:

> Factors weighing in favor of prejudice include: (1) the prosecution intertwining the offenses in opening statement, during its case-in-chief, or in closing argument; (2) the defendant being found guilty on all counts; (3) factual similarities linking the offenses; (4) offenses that are inflammatory in nature; (5) unusually long and complex trials; and (6) a conviction on a charge where the evidence is thin. On the other hand, factors tending to show that a defendant was not prejudiced by going to trial on the joined offenses include: (1) dissimilar offenses such that a

14

> jury would not confuse them; (2) the defendant being acquitted of some charges; and (3) proper jury instructions that adequately make clear to the jury that it must not consider evidence inadmissible to a particular count when coming to a verdict on that count.

*Lovett*, 2012-NMSC-036, ¶ 56 (alteration, internal quotation marks, and citation omitted). However, we only consider those factors that are relevant to a given case. *See id.* ¶ 57.

{27}    Considering the relevant factors, we conclude that Defendant was not actually prejudiced by the district court's denial of his motion to sever. There was some intertwining by the State of the offenses involving the different Ochoa children in its opening statement and closing argument. We also acknowledge that crimes involving illegal sex acts against children are inherently inflammatory. *See Gallegos*, 2007-NMSC-007, ¶ 43; *State v. Montoya*, 1993-NMCA-083, ¶ 17, 116 N.M. 72, 860 P.2d 202 ("Evidence that a defendant committed a prior illegal sex act against a child is extremely prejudicial."). However, these factors supporting actual prejudice are negated by the factors weighing against actual prejudice.

{28}    Specifically, the jury was instructed to "consider[] separately" each crime charged in the indictment. This instruction made it clear to the jury not to consider evidence of a particular count when coming to a verdict on other counts. This is evident by the fact that of the thirteen counts that went to the jury, Defendant was found guilty of only two counts of CSCM involving only one of the alleged victims,

15

EO, as well as guilty of the single count of interference with communications. *See State v. Duffy*, 1998-NMSC-014, ¶¶ 44-45, 126 N.M. 132, 967 P.2d 807 (holding that even if the district court's failure to sever drug paraphernalia and felony-murder charges was an abuse of discretion, the defendant failed to establish that he was actually prejudiced by the failure to sever where he was acquitted by the jury of the paraphernalia charge), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37; *State v. Sero*, 1970-NMCA-102, ¶¶ 7-8, 82 N.M. 17, 474 P.2d 503 (holding that where jury acquitted the defendant of two of three counts of receiving stolen property, the district court's refusal to sever the three counts did not actually prejudice the defendant).

**{29}** Accordingly, although we assume that the district court abused its discretion in denying Defendant's motion to sever, we conclude that Defendant was not actually prejudiced by this presumed error, and it was therefore harmless.

**III. The Argument That the State Failed to Disclose EO's Claimed Recantation Was Not Preserved**

**{30}** Defendant claims that the State engaged in a violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) when it failed to turn over statements made by EO in which her allegations against her father changed. Defendant contends that because of the State's failure to provide him with these statements, which he

16

characterizes as a "recantation[,]" he was deprived of the ability to cross-examine and impeach EO about the statements, warranting a new trial.

{31} Defendant's claim arises from an exchange between EO and the prosecutor during direct examination, during which the prosecutor asked EO whether her grandma Ochoa buys her things. Defendant objected to the State's question on grounds of relevance. The district court sustained the objection, and the State asked for a bench conference. At the bench conference, the prosecutor argued that she believed that EO started "backing down" on her story when her grandma Ochoa came back into her life, and that EO's answer to the question of whether her grandma Ochoa buys her things would "show the jury how she's hesitant about some of the things she's discussing." The district court then permitted the prosecutor to ask the question, to which EO answered "[y]es."

{32} The State responds that Defendant failed to preserve his claim of a *Brady* violation by failing to specifically bring the issue to the attention of the district court. We agree. *See* Rule 12-321 NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *Trace v. Univ. of N.M. Hosp.*, 2015-NMCA-083, ¶ 11, 355 P.3d 103 ("The principal purpose of this rule is to alert the trial judge to the claimed error, giving the trial court an opportunity to correct the matter."). Here, Defendant objected to the State's question to EO regarding

17

whether her grandma Ochoa buys her things on grounds of relevance, but failed to bring to the district court's attention his contention of a *Brady* violation. Because Defendant failed to preserve his claim of a *Brady* violation, we decline to address the issue further. *See State v. Plouse*, 2003-NMCA-048, ¶ 56, 133 N.M. 495, 64 P.3d 522 (holding that the defendant failed to preserve a *Brady* violation where he "failed to specifically raise the *Brady* issue or to invoke [the district court's] ruling on the issue"), *abrogated on other grounds by State v. Garza*, 2009-NMSC-038, ¶¶ 47-48, 146 N.M. 499, 212 P.3d 387.

**IV.    The District Court's Failure to Include the Element of Unlawfulness in the Jury Instructions for Defendant's Counts of CSCM Did Not Give Rise to Reversible Error**

{33}    Defendant claims that the district court committed reversible error when it refused to instruct the jury on unlawfulness as it related to his charges of CSCM. Defendant argues that his testimony, "while appearing to deny any touching [of EO] at all, when read in its entirety and in context clearly supports the view that he only denied touching" her in a sexual manner, but did not deny touching her in a non-sexual way. Because Defendant requested and was refused CSCM instructions including the element of unlawfulness, Defendant's claim was preserved and we review for reversible error. *See State v. Percival*, 2017-NMCA-042, ¶ 8, 394 P.3d 979 (stating an alleged error is "preserved by the tender but refusal of an instruction" and

18

"[i]f the alleged error has been preserved, we review for reversible error" (alterations, internal quotation marks, and citation omitted)).

{34} We review a trial court's rejection of requested jury instructions de novo. *See id.* ¶ 8. "A jury instruction which does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error." *Id.* In *State v. Osborne*, the Supreme Court held "that unlawfulness is an essential element of the offense of CSCM as defined by our [L]egislature." 1991-NMSC-032, ¶ 16, 111 N.M. 654, 808 P.2d 624; *see* Section 30-9-13(A) (providing that "[c]riminal sexual contact of a minor is the *unlawful* and intentional touching of or applying force to the intimate parts of a minor or the *unlawful* and intentional causing of a minor to touch one's intimate parts" (emphasis added)). The Court revisited its holding in *Osborne* in *State v. Orosco*, stating that the trial court does not err in failing to instruct the jury on the element of unlawfulness in CSCM where the lawfulness of the defendant's actions is not in issue. *See* 1992- NMSC-006, ¶¶ 10-11, 18-20, 113 N.M. 780, 833 P.2d 1146.

{35} "To determine whether unlawfulness is 'in issue,' we consider whether there was any evidence or suggestion in the facts, however slight, that could have put the element of unlawfulness in issue." *State v. Luna*, 2018-NMCA-025, ¶ 30, ___ P.3d ___, (internal quotation marks and citation omitted), *cert. denied*, ___-NMCERT-___,

(No. S-1-SC-36896, Mar. 16, 2018); *See Orosco*, 1992-NMSC-006, ¶ 10, (same). In making this determination:

> [w]e do not look to the defendant's assertions alone [because] we recognize that even if a defendant believed that he or she had performed an innocent or lawful touching, the defendant might prefer, as a matter of trial strategy or for some other reason, to deny that the incident occurred rather than attempt to establish that the touching, though it may have occurred, was lawful.

*Orosco*, 1992-NMSC-006, ¶ 10.

{36}     In *Osborne*, the child claimed that the defendant "patted or rubbed her buttocks on one occasion" while she was hugging the defendant goodnight and wearing underwear and a long t-shirt. 1991-NMSC-032, ¶ 6. The "[d]efendant did not recall ever touching [the child's] bottom and said that while it was possible he might have touched her bottom at some point, it would not have been in an inappropriate manner or with an inappropriate intent." *Id.* ¶ 7. The Court determined that the issue of lawfulness was raised by this evidence, and that it therefore had no way of knowing, "because of an erroneous instruction, . . . whether the conviction was or was not on the basis that the touching was done 'unlawfully.' " *Id.* ¶ 41 (internal quotation marks and citation omitted). In other words, the "instructions failed to require the jury to resolve the issue, raised in the evidence at trial, of whether [the] defendant's touching was done innocently as a mere affectionate pat or rub of [the child's] bottom, or whether it was done in a sexual or other improper manner." *Id.* Accordingly, the Court

held that the district court's failure to instruct the jury on the element of unlawfulness constituted fundamental error. *See id.* ¶¶ 41, 43.

{37} In contrast, in *Orosco* (two consolidated appeals), the Court determined that the district court's failure to instruct the jury on the element of unlawfulness in CSCM did not give rise to fundamental error, where none of the facts put the element of lawfulness at issue. *See* 1992-NMSC-006, ¶¶ 18-19. The first defendant "was alleged to have fondled the child's intimate parts in the restroom of a bar." *Id.* ¶ 11. The second defendant was alleged to have "fondled" a child "for three hours in defendant's truck." *Id.* Both defendants denied that any touching took place. Under the facts of these cases, the Court reasoned, the evidence of unlawfulness upon which the jury relied was undisputed and the jury was able to "effectively determine[] the existence of the omitted element." *Id.* ¶ 19. Accordingly, the Court held that "in neither case did the [district] court improperly remove the issue of unlawfulness from the jury." *Id.* ¶ 18; *see also Luna*, 2018-NMCA-025, ¶ 31 (holding that where the child testified the defendant exposed his own penis to the child, then touched the child's clothed penis with the defendant's hand and mouth, the evidence did not put the lawfulness of the defendant's alleged touchings in issue; and the district court's failure to give the jury a CSCM instruction including the element of unlawfulness did not give rise to fundamental error).

21

{38} In *State v. Landers*, a case we described as a "middle ground" between *Osborne* and *Orosco*, the child testified that between the ages of eleven and thirteen years old, the "defendant came to her room to wake her for school, he would lift her nightgown and put his hand down her panties." 1992-NMCA-131, ¶¶ 2, 6, 115 N.M. 514, 853 P.2d 1270, *overruled on other grounds by State v. Kerby*, 2005-NMCA-106, ¶¶ 28-29, 138 N.M. 232, 118 P.3d 740. This occurred almost daily for two years. *Landers*, 1992-NMCA-131, ¶ 2. The child also stated that on one occasion, "when she was in the bathroom, [the] defendant forced her to her hands and knees and rubbed his penis against her vaginal area." *Id.* The defendant "denied that he sexually touched the [child] while waking her up and denied the occurrences of the incident in the bathroom." *Id.* ¶ 3. The defendant also stated that "if he ever touched" the child, "it was always in a fatherly way." *Id.* ¶ 6. Under these facts, we reasoned that:

> although [the] defendant contended that all touching of the [child] was colorably lawful, there was no evidence from which the jury could infer that the particular touchings that the [S]tate sought to prove were lawful. The only way to view [the] defendant's evidence is that he did not touch the [child] whatsoever in the manner the [S]tate alleged *and* that all of his other touchings were lawful. Because [the] defendant did not allege that the particular touchings forming the basis for the charges of CSCM were lawful, we conclude that the issue of the lawfulness of those touchings was not at issue.

*Id.* ¶ 7. Accordingly, we held that the district court's failure to give the lawfulness instruction was not fundamental error. *Id.*

{39} Considering the testimony of EO and Defendant, we conclude that the lawfulness of Defendant's actions toward EO was not in issue. EO testified that during a hug between she, IO, and Defendant that Defendant put his hands in her pants and underwear and squeezed the skin of her "bottom[,]"—i.e., her buttocks, and did this to her on "two or three" other separate occasions. When questioned about the specific touchings alleged by his children, including EO, Defendant stated that he "didn't do any kind of sexual anything with any of [his] children" and that he "never touched any of [his] children in an improper way or [in] any sexual manner. It's such a disgusting thing." Defendant testified further that "[t]he truth of the situation was there was no sexual or anything at all with regards to myself and the children," that he "never touched any of [his] children in a sick or perverted way[,]" and that he had "never" engaged in "criminal sexual type of contact" with his children.

{40} The facts of this case are similar to the facts of *Osborne*, where the defendant was alleged to have patted or rubbed the child's buttocks while giving her a hug and claimed that while he may have touched her buttocks at some point, it would not have been in an inappropriate manner or with an inappropriate intent. *See* 1991-NMSC-032, ¶¶ 6-7. Under these facts, in *Osborne*, our Supreme Court held that the district court erred fundamentally in failing to instruct the jury on the element of unlawfulness in the offense of CSCM. *Id.* ¶¶ 41, 43. Further, every parent touches their child, and a

statement by a parent that she or he has never touched their child in an inappropriate manner is still, in effect, a statement that the parent has touched their child. This is why *Orosco* teaches that we do not look to the defendant's assertions alone in determining whether the lawfulness of a defendant's touchings were at issue, since "even if a defendant believed that he or she had performed an innocent or lawful touching, the defendant might prefer, as a matter of trial strategy or for some other reason, to deny that the incident occurred rather than attempt to establish that the touching, though it may have occurred, was lawful." *Orosco*, 1992-NMSC-006, ¶ 10.

{41}    We cannot ignore this Court's pronouncement in *Landers* that it is insufficient to raise the issue of the lawfulness of a defendant's alleged inappropriate touchings, in the context of CSCM, by denying the specific acts underlying the State's charges, but testifying that any other touching that may have occurred was for a lawful purpose. *See* 1992-NMCA-131, ¶¶ 6-7. As referenced above, Defendant's testimony denied the specific actions forming the basis of the State's CSCM charges against him involving EO, but also affirmatively stated that he had never touched his children, including EO, in an unlawful manner. As a result, following *Landers*, where the defendant denied touching the child in the inappropriate manner alleged by the State, but admitted that any touching of the child that occurred was in a fatherly way, we also conclude here that there was no evidence presented at trial from which the jury

24

could infer that the particular touchings alleged by the State against Defendant involving EO were lawful. Accordingly, we conclude that Defendant was not entitled to an instruction on the offense of CSCM including the element of unlawfulness as to the State's charges relating to EO.

**V.      Sufficient Evidence Supported Defendant's Convictions for Two Counts of CSCM Against EO**

{42}      Defendant finally argues that his convictions for CSCM against EO were unsupported by sufficient evidence. Defendant contends that unlawfulness is an essential element of CSCM, and that because the jury was not instructed on the element of unlawfulness, the State completely failed to prove an essential element of the offense. However, unlawfulness is only an essential element of CSCM when the unlawfulness of a defendant's actions is at issue. *See* UJI 14-925 NMRA, Use Note 4 (stating an instruction including the element that "[t]he defendant's act was unlawful" essential element of CSCM "if the evidence raises a genuine issue of the unlawfulness of the defendant's actions"); *Orosco*, 1992-NMSC-006, ¶¶ 10-11. However, we have concluded above that the evidence presented at trial did not put in issue the lawfulness of Defendant's touchings of EO.

{43}      In jury trials, the jury instructions are the law of the case against which the sufficiency of the evidence is to be measured. *See State v. Duttle*, 2017-NMCA-001, ¶ 18, 387 P.3d 885. Here, the jury was instructed that in order to find Defendant guilty

25

of CSCM of a child under the age of thirteen against EO, as alleged in counts 10 and 11 of the indictment, the State was required to prove beyond a reasonable doubt that two instances occurred in which:

1. [D]efendant touched or applied force to the unclothed buttocks of [EO];

2. [EO] was 12 years of age or younger;

3. This happened in New Mexico on or between the 14th day of April, 2008, and the 12th day of May, 2008.

As referenced above, EO testified that on two or three separate occasions, Defendant put his hands in her pants and underwear and squeezed the skin of her "bottom," and the evidence was that EO was under the age of twelve at the time. Viewing this evidence in the light most favorable to the guilty verdicts, and indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdicts, we conclude that substantial evidence supported Defendant's convictions for two counts of CSCM against EO beyond a reasonable doubt. *See State v. Carrillo*, 2017-NMSC-023, ¶ 42, 399 P.3d 367 (stating that in reviewing a challenge to the sufficiency of evidence supporting a conviction, appellate courts "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict" (internal quotation marks and citation omitted)); *State v. Suazo*, 2017-NMSC-011, ¶ 32, 390 P.3d 674 (stating that the central consideration in sufficiency of evidence review is whether substantial

26

evidence, direct or circumstantial, exists to support a verdict beyond a reasonable doubt as to all essential elements of the crimes for which the defendant was convicted).

**CONCLUSION**

{44}     For the foregoing reasons we affirm Defendant's convictions for CSCM and interference with communications.

{45}     **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____
**M. MONICA ZAMORA, Judge**


_____
**DANIEL J. GALLEGOS, Judge**