# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-046

Filing Date: September 1, 2020

No. A-1-CA-37055

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

ISAAC MARQUEZ,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Alisa A. Hart, District Judge

Certiorari Granted, April 23, 2021, No. S-1-SC-38502. Released for Publication
October 12, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Freedman Boyd Hollander Goldberg Urias & Ward, P.A.
Karen Grohman
Shammara H. Henderson
Christopher A. Dodd
Albuquerque, NM

for Appellant

## OPINION

**ATTREP, Judge.**

**{1}** Defendant Isaac Marquez appeals his conviction for one count of criminal sexual penetration in the first degree (child under thirteen), contrary to NMSA 1978, Section 30-9-11(C) (1995, amended 2009). Defendant was charged with acts of digital

penetration against his ex-wife's granddaughter. He advances several claims of error, one of which—the admission of evidence of uncharged sexual misconduct with the victim—we deem the basis for reversal. In reaching this conclusion, we reaffirm that the so-called "lewd and lascivious disposition" exception to the prohibition against propensity evidence is abolished in New Mexico. Further concluding the State has advanced no viable non-propensity reason for the admission of the uncharged sexual misconduct evidence and that its admission was not harmless, we reverse Defendant's conviction and remand for a new trial. Because we reverse on this basis we do not consider Defendant's remaining claims of error.

## BACKGROUND

**{2}** The charges in this case stem from allegations made by J.K., the granddaughter of Defendant's ex-wife Judy, years after the abuse occurred. Defendant and Judy had a contentious breakup in November 2009. Around that time, J.K. (by then an adult) disclosed to Judy that Defendant sexually abused J.K. when she was between six and eight years old. A grand jury eventually indicted Defendant in June 2015, charging him with four counts of criminal sexual penetration. Trial commenced later that year.

**{3}** Of relevance to this appeal, defense counsel moved the district court, prior to the taking of any testimony, to prohibit the State from introducing evidence of certain uncharged conduct as impermissible propensity evidence. Specifically, J.K. disclosed in pretrial interviews that, during the same timeframe of the charged conduct, Defendant also made J.K. touch his penis on several occasions. In addition, Judy was prepared to testify that she witnessed Defendant walking around with an open robe in J.K.'s presence. When asked by the district court to proffer an allowable purpose for this evidence under Rule 11-404(B) NMRA, the State asserted: "[L]ewd and lascivious conduct with the same victim is admissible under [Rule 11-]404(B), if it shows a pattern of conduct with that victim and it shows an ongoing pattern of behavior with that victim." After reviewing case law cited by the State, and taking into consideration Rule 11-403 NMRA, the district court ruled the evidence admissible, reasoning: "It involves the same victim. It's during the same time frame. There is relevance with regard to the lewd and lascivious disposition towards the particular victim. It also corroborates the victim's testimony and gives some context to this behavior."

**{4}** J.K. was twenty-five years old at the time of trial. J.K. testified that, sometime between the ages of six and eight, she lived on and off with Judy and Defendant for a couple of months where she slept on a couch in the living room. J.K. testified that Defendant, on numerous occasions, would get up in the middle of the night to get cookies from the kitchen. On his way, Defendant would stop and fondle J.K. underneath her underwear and would "play with [her] clitoris" with the tips of his fingers. J.K. did not remember these incidents with any specificity, testifying that they were "[j]ust a blur." After this testimony, the State elicited from J.K. that Defendant also did other inappropriate things to her. When asked what those incidents were, J.K. testified: "In his bedroom, during the day, if I had asked to go play with kids across the street or I had asked for a candy, he would be sitting in his bed in his robe, and he would have me

come over, and he would use my hand to stroke his penis." J.K. specifically remembered that, on one occasion when Defendant did this to her, Judy was in her bathroom taking a bath. The State also asked Judy at trial whether there had been any incidents between Defendant and J.K. that caused her concern. Judy responded that she once witnessed Defendant standing in front of J.K. with an open robe wearing only his underwear. Defendant took the stand in his defense and testified that he never touched J.K. sexually.

**{5}**     At the conclusion of the State's case, the district court, on concession of the State, entered a directed verdict on three of the four counts because J.K. described a course of conduct and could not distinguish separate acts. The jury found Defendant guilty of the remaining charge, and the district court sentenced Defendant to a term of imprisonment of twelve years.

## DISCUSSION

**{6}**     Defendant argues on appeal that the uncharged sexual misconduct evidence—i.e., Defendant making J.K. touch his penis and walking around with an open robe in front of J.K.—was improper propensity evidence admitted in violation of Rule 11-404(B). Defendant also argues that, even if this evidence was admissible for a purpose other than propensity, its admission was prohibited by Rule 11-403 because the prejudicial effect of the evidence substantially outweighed its probative value. Finally, Defendant argues that the erroneous admission of the evidence was not harmless. We first examine whether the district court's stated rationale—i.e., the lewd and lascivious disposition exception—was a valid basis for admitting the uncharged sexual misconduct evidence. Reaffirming once again that this exception has been abolished and thus provides no basis for the admission of such evidence, we turn next to whether the other grounds advanced by the State on appeal justify the district court's ruling. Because they do not and because the admission of the evidence was not harmless, we reverse Defendant's conviction and remand for a new trial.

## I.     The District Court Erred in Admitting Evidence of Defendant's Uncharged Conduct

**{7}**     Rule 11-404 prohibits the introduction of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(1). Such propensity evidence, "although logically relevant to show that the defendant committed the crime by acting consistently with his or her past conduct," is inadmissible due to the likelihood the jury will convict for crimes other than those charged, or because it simply believes the defendant to be a bad person deserving of punishment. *State v. Gallegos*, 2007-NMSC-007, ¶ 21, 141 N.M. 185, 152 P.3d 828. A trial court may nonetheless admit such evidence for a purpose other than to show propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). "This list is not exhaustive and evidence of other wrongs may be admissible on alternative relevant bases so long as it is not admitted to prove

conformity with character." *State v. Otto*, 2007-NMSC-012, ¶ 10, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted). Critically, though, "it is incumbent upon the proponent of Rule 11-404(B) evidence to identify and articulate the consequential fact to which the evidence is directed" and to state with precision "the rationale for admitting the evidence to prove something other than propensity." *Gallegos*, 2007-NMSC-007, ¶ 25. Assuming the district court determines the evidence admissible under Rule 11-404(B), it next is required to determine whether "the probative value related to its permissible purpose is substantially outweighed by the factors enumerated in Rule 11-403." *Gallegos*, 2007-NMSC-007, ¶ 22.

**{8}**     "We review a trial court's decision to admit evidence under Rule 11-404(B) for abuse of discretion." *State v. Romero*, 2006-NMCA-045, ¶ 73, 139 N.M. 386, 133 P.3d 842. "An abuse of discretion occurs when the district court's decision can be characterized as clearly untenable or not justified by reason." *State v. Ervin*, 2008-NMCA-016, ¶ 9, 143 N.M. 493, 177 P.3d 1067 (internal quotation marks and citation omitted). A district court also abuses its discretion when its "discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003-NMCA-126, ¶ 9, 134 N.M. 459, 78 P.3d 913.

## A.     The Lewd and Lascivious Disposition Exception Is Not Good Law

**{9}**     At trial, the State primarily relied on this Court's decision in *State v. Casaus*, 1996-NMCA-031, 121 N.M. 481, 913 P.2d 669, to argue for the admission of the uncharged sexual misconduct evidence. In particular, the State argued that the evidence was admissible as "prior lewd and lascivious conduct with the same victim . . . [in order to] place[] the criminal charge in context." In permitting the admission of the evidence, the district court accepted this rationale.

**{10}**     On appeal, Defendant asserts the district court abused its discretion by relying on this exception to Rule 11-404(B) that is no longer good law.[1] Defendant maintains that this Court abrogated the lewd and lascivious disposition exception to Rule 11-404(B) in *Kerby I* and that our Supreme Court did not alter this holding when it subsequently affirmed this Court's decision on other grounds. *See State v. Kerby* (*Kerby II*), 2007-NMSC-014, 141 N.M. 413, 156 P.3d 704. Although the State acknowledges this Court abrogated the lewd and lascivious disposition exception in *Kerby I*, it asserts, without developing an argument as to why we ought to depart from settled law, that *Kerby I* has

---

[1]Defendant on appeal parses out the district court's ruling as providing four separate reasons for admitting the evidence—i.e., because it: (1) involved the same victim; (2) demonstrated a lewd and lascivious disposition to the victim; (3) corroborated the victim's testimony; and (4) provided context to the charged behavior. Defendant proceeds to address why each reason is not a proper purpose. The individual reasons Defendant addresses, however, are all part and parcel of the lewd and lascivious disposition exception and we resolve Defendant's argument accordingly. *See State v. Landers*, 1992-NMCA-131, ¶¶ 23-25, 115 N.M. 514, 853 P.2d 1270 (permitting evidence of a defendant's lewd and lascivious disposition toward the victim where the evidence corroborates the victim's testimony and places the charged acts in context), *overruled by State v. Kerby* (*Kerby I*), 2005-NMCA-106, ¶ 29, 138 N.M. 232, 118 P.3d 740.

been placed in doubt. We take this opportunity to reaffirm that the lewd and lascivious disposition exception in New Mexico is abolished.[2]

**{11}**   A review and reiteration of this Court's prior decisions—in which we already have laid out the shortcomings of the lewd and lascivious disposition exception—is instructive. This Court first explicitly named the lewd and lascivious disposition exception, which is rooted in the common law, in *State v. Minns*, 1969-NMCA-035, 80 N.M. 269, 454 P.2d 355, prior to the Rules of Evidence being adopted in 1973. Although *Minns* recognized the general rule against the admissibility of propensity evidence, *id.* ¶ 12, it concluded nonetheless that this rule was "inapplicable to other or similar sex offenses committed by [the] defendant with the prosecuting witness[,]" *id.* ¶ 13. "Such evidence, if not too remote," *Minns* held, "is admissible as showing a lewd and lascivious disposition of [the] defendant toward the prosecuting witness and as corroborating evidence." *Id.*

**{12}**   Nearly twenty years after the adoption of the Rules of Evidence, this Court in a pair of cases addressed the lewd and lascivious disposition exception in light of Rule 11-404(B). First, in *State v. Lucero*, 1992-NMCA-107, 114 N.M. 489, 840 P.2d 1255, this Court noted that some jurisdictions had held that "any evidence of a defendant's sexual desires or practices may be relevant to prove a 'licentious' or 'lewd' disposition." *Id.* ¶ 11. Such a rule, *Lucero* discussed, had been rationalized in child sex abuse cases on two grounds: (1) "the need to bolster the victim's credibility"; and (2) "the belief that sex crimes alone are more likely to follow a pattern based on the unique psychological profile of a likely perpetrator." *Id.* ¶ 15; *see also* 1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 4:16 (rev. ed. 2020) (restating these rationales for a special exception in sex crime cases as: (1) the purported difficulty of proof due to the secretive nature of sex crimes, and (2) the suspected "high rate of recidivism among sex offenders").

**{13}**   *Lucero* noted, however, that these rationales and the special exception itself have regularly been condemned by scholars and courts. *See Lucero*, 1992-NMCA-107, ¶ 11 ("Some courts have likewise criticized the 'lewd disposition' exception and expressly refused to adopt it."); *cf. State v. Aguayo*, 1992-NMCA-044, ¶ 28, 114 N.M. 124, 835 P.2d 840 (rejecting, in similar context involving the physical abuse of an infant, the "siren song" of interpreting the Rules of Evidence "more loosely in child abuse cases because of the difficulty of proving a crime against a mute victim and because other witnesses are usually unavailable"). Indeed, a prominent federal practice treatise, quoted in *Lucero*, provided: " 'The need for the evidence has led some courts to rely on debatable assumptions about recidivism and problematic psychiatric theories as support for the proposition that propensity evidence is more reliable in the case of sex offenders.' " *Lucero*, 1992-NMCA-107, ¶ 11 (quoting 22 Charles A. Wright & Kenneth

---

[2]To our knowledge, our New Mexico Supreme Court has never ruled on the validity of the lewd and lascivious disposition exception. *See Gallegos*, 2007-NMSC-007, ¶ 26 (concluding that the lewd and lascivious disposition exception was inapplicable under the facts of that case and observing that that "the lewd and lascivious doctrine is simply a euphemism for character evidence and should be rejected" (internal quotation marks and citation omitted)).

W. Graham, *Federal Practice and Procedure* § 5239, at 462 (1978)); *see also* 1 Imwinkelried, *supra*, § 4:16 (rebutting the two common rationales for a special exception in sex crime cases on the grounds that: (1) "critics [have] argued that the secretive nature of sex crimes does not justify a special exception" as "[m]any crimes are usually committed in a clandestine fashion," and (2) "the most recent research largely discredits the old medical literature sanctioning the lay belief" that "recidivism among sex offenders is extraordinarily high" (footnotes omitted)). This Court agreed with the criticisms "that the 'lewd disposition' exception is nothing more than a euphemism for the character evidence which Federal Rule of Evidence 404(b) and its state counterparts are designed to exclude." *Lucero*, 1992-NMCA-107, ¶ 11. In line with this, *Lucero* refused to create "a special, unrecognized exception under Rule 404(B)" and declined to extend the lewd and lascivious disposition exception to include a defendant's sexual acts with a person other than the victim. *Id.* ¶ 15.

{14}    In the second case, *Landers*, this Court again recognized criticisms that "the 'lewd and lascivious' exception . . . simply allow[s] otherwise inadmissible propensity evidence." 1992-NMCA-131, ¶ 23. Nonetheless, *Landers* declined to deviate from cases upholding the exception for uncharged sexual misconduct involving the complaining witness, following the promulgation of Rule 11-404(B). *See Landers*, 1992-NMCA-131, ¶ 23 ("[W]e believe the 'lewd and lascivious disposition' exception . . . is justified in determining whether evidence of prior acts with the complaining witness is admissible, even though use of the exception may not be justified in other situations."); *see also id.* ¶ 16 ("This rule has been affirmed since the Rules of Evidence were adopted in cases involving sex offenses committed upon children." (citing *State v. Scott*, 1991-NMCA-081, 113 N.M. 425, 828 P.2d 958; *State v. Delgado*, 1991-NMCA-064, 112 N.M. 335, 815 P.2d 631; *State v. Mankiller*, 1986-NMCA-053, 104 N.M. 461, 722 P.2d 1183)). *Landers* premised its holding on the fact that "the evidence corroborated the victim's testimony and placed the charged acts in context."[3] 1992-NMCA-131, ¶ 25; *see also id.* ¶ 23 (justifying the exception because "without such evidence, the otherwise seemingly isolated incident would seem incredible" (alterations, omission, internal quotation marks, and citation omitted)).

{15}    Over a decade later, this Court in *Kerby I* explicitly disavowed the lewd and lascivious disposition exception in all contexts, deeming it "indefensible." 2005-NMCA-106, ¶ 29 (internal quotation marks and citation omitted). The defendant in *Kerby I* had been charged with numerous counts of criminal sexual contact with a minor for touching the victim's vulva and buttocks. *Id.* ¶¶ 2-6. In rebuttal, the state presented evidence establishing that the defendant had used a peephole to spy on the victim when she was in the bathroom. *Id.* ¶¶ 10-15. The district court ruled the peephole evidence admissible because it involved the same victim and because the defendant had elicited testimony suggesting that his touching of the victim was innocent and not unlawful. *See id.* ¶¶ 21-22. This Court reversed. *Id.* ¶¶ 1, 34.

---

[3]Relying on *Landers*, *Casaus*—upon which the State and the district court relied in this case—offered the same rationale. *See Casaus*, 1996-NMCA-031, ¶ 27 ("The prior bad acts thus indicated [the d]efendant's lewd and lascivious disposition toward the victim and placed the criminal charge in context.").

**{16}**     In addressing the continued viability of the lewd and lascivious disposition exception in the context of uncharged sexual misconduct involving the prosecuting witness, *Kerby I* examined more recent commentary criticizing special exceptions in sex crime cases. *See id.* ¶ 27 (citing 1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 4:18 (rev. ed. 2005)). Relying on that commentary, this Court made plain that such an exception is flatly contrary to Rule 11-404(B) and that it was highly doubtful the exception survived the adoption of the Rules of Evidence. *See Kerby I*, 2005-NMCA-106, ¶ 28 ("Nothing in the express language of Rule 11-404 mandates the perpetuation of a common-law exception to the general proscription of propensity evidence; to the contrary, the lewd and lascivious disposition exception appears to flatly contradict the general proscription of propensity evidence found in Rule 11-404(A) and repeated in the first sentence of Rule 11-404(B)."); *id.* ¶ 27 ("To say that the exceptions' survival [after the adoption of the Federal Rules of Evidence] is questionable is probably an understatement. It is exceedingly difficult to reconcile the exceptions for evidence of uncharged sexual misconduct with the clear language of [Federal Rule of Evidence] 404(b). The exception seems at odds with the prohibition in the first sentence of [that rule]." (alteration, internal quotation marks, and citation omitted)). *Kerby I* also thought it significant that, unlike in New Mexico, Congress added special rules to the Federal Rules of Evidence in 1994 to allow for the admission of uncharged sexual misconduct in criminal cases. *See id.* ¶ 27; *see also* Fed. R. Evid. 413, 414.

**{17}**     This Court then addressed *Landers*, remarking "it exceedingly difficult to reconcile the *Landers* exception for evidence of a lewd and lascivious disposition toward the prosecuting witness with Rule 11-404." *Kerby I*, 2005-NMCA-106, ¶ 28. Significantly, *Kerby I* noted that, in the context of considering whether to allow the admission of evidence of uncharged sexual misconduct involving those other than the complaining witness, we already had determined that the lewd and lascivious disposition exception was nothing more than a euphemism for propensity evidence— evidence that Rule 11-404(B) was designed to exclude. *Id.* (discussing *Lucero*, 1992-NMCA-107, ¶ 11). *Kerby I* thought it unfortunate that, in *Landers*, "we did not critically examine how the evidence of uncharged acts would have tended to corroborate the victim's testimony or place the charged acts in context *other than* through an inference of the defendant's propensity for improper sexual conduct towards the victim." *Kerby I*, 2005-NMCA-106, ¶ 26 (emphasis added). *Kerby I* thus held: "Logical consistency requires that we extend *Lucero* to the admission of uncharged misconduct with the prosecuting witness." *Id.* ¶ 29; *see also State v. Williams*, 1994-NMSC-050, ¶ 37 & n.1, 117 N.M. 551, 874 P.2d 12 (Montgomery, C.J., specially concurring) (believing that the distinction created by *Lucero* and *Landers* is "indefensible" and noting that "[t]he anomaly of the *Landers* approach . . . has been recognized, at least implicitly, in a number of cases that adhere to strict application of Rule 11-404(B)"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110; *State v. Sandate*, 1994-NMCA-138, ¶ 34, 119 N.M. 235, 889 P.2d 843 (observing that "[t]he rationale underlying *Landers* may very well require reconsideration").

**{18}**     The State makes no developed argument as to why this Court ought to depart from our holding in *Kerby I*, contending instead that *Kerby I*'s abrogation of the lewd and

lascivious disposition exception has "been placed in doubt" by *Kerby II*. *See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶¶ 33-34, 125 N.M. 721, 965 P.2d 305 (discussing the importance of stare decisis and the special justification required to depart from prior precedent). *Kerby II*, however, did no such thing. Beyond abolishing the lewd and lascivious disposition exception, *Kerby I* also rejected the State's argument that the peephole evidence was nonetheless admissible because the defendant had opened the door to this evidence by contesting whether his touching of the victim was unlawful. 2005-NMCA-106, ¶¶ 31-32. In *Kerby II*, our Supreme Court disagreed only with the holding that the peephole evidence was inadmissible to prove unlawful intent. 2007-NMSC-014, ¶¶ 25-26. *Kerby II* said nothing about this Court's conclusion that the use of the lewd and lascivious disposition exception to admit otherwise inadmissible propensity evidence could no longer logically be sustained. *See generally id.* Given this, the State's assertion on appeal that *Kerby II* "placed in doubt" our rejection of the exception is misplaced. *See Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23, 84 N.M. 343, 503 P.2d 323 (noting that "[t]he general rule is that cases are not authority for propositions not considered"). Indeed, our Supreme Court recognized *Kerby I* "continue[d] as good law" on matters not modified by that Court. *See Kerby II*, 2007-NMSC-014, ¶ 26. Further, our Supreme Court has subsequently recognized that *Kerby I* overruled *Landers*. *See, e.g.*, *State v. Sosa*, 2009-NMSC-056, ¶ 31, 147 N.M. 351, 223 P.3d 348 (citing *Landers* for a proposition pertaining to a prosecutor's statement in closing and providing that *Landers* was "overruled on other grounds by [*Kerby I*]").

**{19}** In sum, this Court's criticisms of the lewd and lascivious disposition exception in both *Lucero* and *Kerby I* are well founded and reasoned, and we reaffirm them. Today we again disavow the logical inconsistency between *Lucero* and *Landers*. We see no principled reason to recognize that evidence of a person's lewd and lascivious disposition is inadmissible as propensity evidence when the prior acts involved a person other than the complaining witness, but then hold the same type of evidence admissible when the defendant's acts involved the same victim at trial. Further, maintaining, as the State and the district court did below, that the evidence is nonetheless admissible under Rule 11-404(B) simply because it "corroborate[s] the victim's testimony and place[s] the charge in context[,]" *Casaus*, 1996-NMCA-031, ¶ 26, does nothing to ameliorate this contradiction. *Cf.* 1 Imwinkelried, *supra*, § 6:6 ("Any similar uncharged act generally corroborates in the sense that the act shows the defendant's propensity toward that type of crime and thereby increases the likelihood that the defendant committed the charged act. But that is precisely the theory of logical relevance forbidden by [Federal Rule of Evidence] 404(b)."); Basyle J. Tchividjian, *Predators and Propensity: The Proper Approach for Determining the Admissibility of Prior Bad Acts Evidence in Child Sexual Abuse Prosecutions*, 39 Am. J. Crim. L. 327, 339 (2012) ("[C]ollateral fact evidence admitted for the stated purpose of corroboration can ultimately be categorized as propensity evidence."); *State v. Nelson*, 501 S.E.2d 716, 722-23 (S.C. 1998) ("[T]he evidence is only relevant to show the 'context' of the crime when the assumption is made that [the defendant] was acting in conformity with the character trait of being a pedophile. . . . [T]his argument is but [a] cleverly disguised way of getting impermissible character evidence before the jury.").

**{20}**   While we recognize the potential difficulties of prosecuting sex crimes against children, we do not "support continued application of an exception which allows the prosecution to accomplish what the general propensity rule is intended to prevent." *Lannan v. State*, 600 N.E.2d 1334, 1338 (Ind. 1992). Whether there are policy reasons to admit uncharged misconduct evidence more freely in sex crime cases, particularly those involving child victims, than in other criminal cases is a question we decline to address. We think it more proper for this inquiry to be undertaken in the rule-making process.[4] *Accord Kerby I*, 2005-NMCA-106, ¶ 30 ("Adoption of a sex-crimes-against-children exception to Rule 11-404 is best carried out in the process of rule-making.").

**{21}**   We reaffirm our conclusion in *Kerby I* disavowing *Landers* and related cases and reiterate our view that the lewd and lascivious disposition "exception is nothing more than a euphemism for the propensity evidence that Rule 11-404 was designed to exclude."[5] *Kerby I*, 2005-NMCA-106, ¶ 29. Consequently, the district court abused its discretion when relying on the lewd and lascivious disposition exception to admit evidence of Defendant's uncharged sexual misconduct with J.K.

**B.    The Uncharged Sexual Misconduct Evidence Was Not Admissible on Other Grounds**

**{22}**   Because the lewd and lascivious disposition exception is not good law and as such cannot provide a basis for the admission of the uncharged sexual misconduct evidence against Defendant, we next examine whether any allowable purpose for the evidence advanced by the State on appeal authorizes its admission. *See Gallegos*, 2007-NMSC-007, ¶ 26 (holding that the appellate court "will affirm the [district] court's decision if it [is] right for any reason so long as it is not unfair to the appellant"). The State advances two arguments why this evidence was admissible under Rule 11-404(B) as something other than pure propensity evidence: (1) the evidence was relevant to the issue of unlawfulness, and (2) the evidence rebutted Defendant's theory of fabrication. *See Kerby I*, 2005-NMCA-106, ¶ 25 ("Under Rule 11-404(B), the proponent of evidence of other acts must identify the particular consequential fact upon which the proffered evidence bears and must explain how the proffered evidence makes the consequential fact 'more probable or less probable,' Rule 11-401 NMRA, *in a way that does not depend upon an inference of a propensity for criminal behavior*."). We conclude that these alternative bases for admission are without merit.

**{23}**   First, relying on *Kerby II*, the State posits that the uncharged sexual misconduct evidence was admissible because it tended to prove the element of unlawfulness. *See* §

---

[4]Some states have adopted rules analogous to Rules 413 and 414 of the Federal Rules of Evidence. *See* Tchividjian, 39 Am. J. Crim. L. at 342 ("Though no state has adopted them in their entirety, approximately eleven states have codified rules which are similar in substance and application to [Federal Rules of Evidence] 413 and . . . 414.").

[5]After *Kerby I*, this Court in *State v. Dietrich*, 2009-NMCA-031, 145 N.M. 733, 204 P.3d 748, relied on *Landers* to uphold the admission of extrinsic evidence of the defendant's sexual misconduct because it "directly bolster[ed] the complaining witness's testimony by providing significant corroboration." *Id.* ¶¶ 42-44 (internal quotation marks and citation omitted). To the extent *Dietrich* relied on the lewd and lascivious disposition exception for this holding, it is overruled.

30-9-11(A) ("Criminal sexual penetration is the unlawful and intentional . . . causing of penetration[.]"). Unlike here—where Defendant never admitted to touching J.K.—the defendant in *Kerby II* admitted to touching the victim's intimate parts but insisted he did so innocently. *See* 2007-NMSC-014, ¶ 26. Consequently, whether the defendant had sexual intent when he touched the victim was squarely before the jury in *Kerby II*. *See id.* ("[The d]efendant's state of mind was the crucial issue in the case." (internal quotation marks and citation omitted)). Although the State acknowledges *Kerby II* is different from this case, it contends the Rule 11-404(B) evidence was admissible to prove unlawfulness because "in meeting its burden of proving all essential elements beyond a reasonable doubt, the State is not limited to presenting evidence only on those issues expressly put in issue by [D]efendant."

**{24}** Case law on this point, however, cuts strongly against the State's position. We have long understood that "[t]he rule in New Mexico and many other jurisdictions is that evidence is not admissible under Rule 404(b) to prove a material element of the crime charged unless that element is *in issue*." *State v. Beachum*, 1981-NMCA-089, ¶ 7, 96 N.M. 566, 632 P.2d 1204 (emphasis added). "[I]f a fact is wholly undisputed, the only additional probative value extrinsic-act evidence would have on that issue would be to show a person's propensity. Evidence solely having value as propensity evidence is inadmissible under Rule 11-404(B) and is to be excluded under that rule automatically." *Gallegos*, 2007-NMSC-007, ¶ 35; *see also, e.g., State v. Gwynne*, 2018-NMCA-033, ¶ 21, 417 P.3d 1157 ("[T]he [s]tate fails to establish that 'opportunity' was even a fact in issue, meaning that it could not have served as the basis for the admission of the [Rule 11-404(B)] testimony."); *State v. Ruiz*, 2001-NMCA-097, ¶ 21, 131 N.M. 241, 34 P.3d 630 (reading prior case law as limiting "the 'absence of mistake' exception under Rule 11-404(B) to situations when a defendant claims to have made a mistake, such as when the accused admits to touching the victim but says it was accidental or by mistake").

**{25}** In this case, unlike the situation in *Kerby II*—in which our Supreme Court determined the defendant had "injected the issue" of unlawfulness by presenting evidence that he innocently touched the victim's buttocks, 2007-NMSC-014, ¶ 26—the defense was simply that Defendant did not touch J.K.'s intimate parts. Where, as here, a defendant denies the touching entirely, the defendant's state of mind is not a material issue. *See People v. Bagarozy*, 522 N.Y.S.2d 848, 854 (N.Y. App. Div. 1987) ("In the trial of sex offenses, extrinsic evidence of intent is admissible only in those cases where there is no challenge to the occurrence of the physical contact itself, but the intent of the actor is at issue because the nature of the contact is subject to varying interpretations."); *State v. Fonseca*, 681 S.E.2d 1, 5 (S.C. Ct. App. 2009) ("[B]ecause [the a]ppellant denies that the contact ever occurred, intent was not made a material issue. . . . [I]f we hold this evidence admissible, prior sexual acts would be admissible to prove the required intent in all prosecutions of subsequent sex crimes."); *cf. State v. Bailey*, 2017-NMSC-001, ¶ 22, 386 P.3d 1007 ("[W]here a defendant refutes allegations of sexual contact with a minor victim by claiming that the sexual contact was parental or medical, we conclude that evidence of other acts directed to that victim that bear on a defendant's specific, unlawful intent to commit the charged offense are admissible under Rule 11-404(B)(2)."). Because of this, the uncharged sexual misconduct evidence

was not admissible as tending to prove the unlawfulness of the touching denied by Defendant. *See Nelson*, 501 S.E.2d at 722 ("[The p]etitioner denied any sexual contact with the victim, making it highly questionable whether the element of intent was a material issue in the case. We find the [s]tate's argument this evidence was relevant to show motive or intent is merely a cleverly disguised way of asserting [the p]etitioner committed the crimes because he has a propensity to commit sexual offenses.").

**{26}** Relatedly, we dispose of the State's argument that Defendant did in fact dispute the element of unlawfulness at trial. Quoting *Otto*, 2007-NMSC-012, ¶ 11, the State asserts Defendant created a "potential inference" that he "did not penetrate [J.K.] and that, if he touched her, he did not and would not, do so in a sexual manner." The portions of the transcript cited by the State, however, do not support this contention. For instance, the State notes that Judy and the lead detective investigating this case testified at trial that Defendant, when denying J.K.'s allegations to them, stated "I didn't do anything to her, why would I?" It is not at all clear to us why the State thinks this is anything other than a blanket denial of wrongdoing by Defendant. The State also notes that Defendant responded "No" when his counsel asked him on direct examination: "Did you ever touch [J.K.] sexually?" Counsel followed up by asking, "In any way?" Defendant again stated "No." In context, we are convinced the defense line of questioning was designed to convey to the jury that Defendant claimed never to have touched J.K.'s intimate parts—not, as the State would have it, as an implicit admission that Defendant *did* touch J.K.'s intimate parts, just not in a sexual manner.

**{27}** In sum, we think it clear from the record that Defendant simply denied ever touching J.K.'s intimate parts.[6] This is unlike *Otto* where the defendant's theory was that he mistakenly touched the victim. *See* 2007-NMSC-012, ¶ 11 ("A potential inference of mistake or accident was created by [the d]efendant's statement to the detective that he 'was ready to finger [the victim] but he woke up but he didn't think he had.' "); *see also Bailey*, 2017-NMSC-001, ¶ 21 (explaining that "[t]he defendant in *Otto* claimed that he was asleep and unconsciously molested the child victim"). It also is unlike *Kerby II*, where the defendant "injected the issue of intent by calling his mother to testify that [the d]efendant told her the touch was merely a fatherly pat on the bottom." 2007-NMSC-014, ¶ 26. What differentiates this case from *Otto* and *Kerby II*—and makes the admission of the uncharged sexual misconduct evidence to prove unlawfulness impermissible—is that, notwithstanding the State's parsing of the testimony, Defendant here never made *any* acknowledgement that he did (or may have) touched an intimate body part of J.K.

**{28}** Second, we also reject the State's one-paragraph argument that the uncharged sexual misconduct evidence was admissible because "Defendant put at issue the

_____

[6]We note that, prior to this appeal, we heard the State's interlocutory appeal from the district court's determination that Defendant received ineffective assistance of counsel when trial counsel failed to advise Defendant about the possibility of requesting a jury instruction on the lesser-included offense of criminal sexual contact of a minor. *See State v. Marquez*, No. 35,818, mem. op. (N.M. Ct. App. Feb. 21, 2017) (non-precedential). This Court reversed the district court, concluding the lower court's finding of prejudice "difficult to comprehend" given the clear record that Defendant's trial strategy was one of "total denial." *Id.* ¶ 11. We find nothing in the record to change our assessment of the defense.

question of [J.K.]'s credibility" by suggesting that Judy had "influenced [J.K.] to fabricate the accusation against Defendant." As already discussed, we reject the notion that Rule 11-404(B) evidence involving the same victim is admissible simply because it may corroborate the victim's testimony. *See* Part I.A, paragraph 19, *supra*. Further, we fail to see how—other than suggesting Defendant's propensity to sexually abuse J.K.— evidence of Defendant's uncharged sexual misconduct would have made it more or less probable that Judy did not influence J.K. to fabricate the allegation. *Cf. State v. Jones*, 1995-NMCA-073, ¶ 15, 120 N.M. 185, 899 P.2d 1139 ("Although the [s]tate argues that the other crime would be admissible to show 'common scheme' and to rebut the claim of consent, the way the evidence accomplishes this is through the prohibited method of proving propensity.").

**{29}** Although the State cites *State v. Jordan*, 1993-NMCA-091, 116 N.M. 76, 860 P.2d 206, in support of its theory that this evidence was admissible to rebut a claim of fabrication, that case is different.[7] In *Jordan*, the defendant theorized that the victim's father spoke to the victim after she spent time with the defendant to encourage the victim to fabricate a story. *See id.* ¶¶ 4-5. Unlike here, the victim's father in *Jordan* knew about the prior misconduct when he spoke with the victim. *Id.* ¶ 17. Hence, the evidence in *Jordan* was admissible to rebut the defendant's fabrication theory because it "explain[ed] why the victim's father questioned [the victim after the incident giving rise to the charges]." *Id.* ¶ 16. In this case, by contrast, the Rule 11-404(B) evidence had no bearing on the genesis of the conversation in which J.K. made her disclosure to Judy and did not rebut Defendant's theory in a way other than "show[ing] on a particular occasion [Defendant] acted in accordance with [his] character." Rule 11-404(B)(1).

**{30}** We therefore reject the State's alternative grounds for admission of the uncharged sexual misconduct evidence. There being no non-propensity basis for the admission of this evidence, it was an abuse of discretion for the district court to admit the same. *See Gallegos*, 2007-NMSC-007, ¶ 35 ("Evidence solely having value as propensity evidence is inadmissible under Rule 11-404(B) and is to be excluded under that rule automatically.").

## II.   The Error Was Not Harmless

**{31}** Having determined the district court abused its discretion by admitting evidence of Defendant's uncharged conduct, we must next determine whether the error was harmless. *See Tollardo*, 2012-NMSC-008, ¶ 25 ("Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful."). Noting the State on appeal does not address Defendant's harmless error argument, and based on our examination of the record, we agree with Defendant that the error was harmful.

---

[7]*Jordan* appears to rely, at least in part, on the defendant's lewd and lascivious disposition toward the victim in concluding that the district court did not abuse its discretion by admitting the defendant's uncharged sexual misconduct with the victim in that case. *See id.* ¶ 21. To the extent *Jordan* relied on the lewd and lascivious disposition exception for its holding, it is overruled.

**{32}**     Non-constitutional errors, such as the erroneous evidentiary ruling at issue in this case, are "harmless when there is no reasonable probability the error affected the verdict." *Id.* ¶ 36 (emphasis, internal quotation marks, and citation omitted). In holistically assessing the harmfulness of the error, we consider, among other things, the circumstances of the error, the emphasis placed on the error, evidence of a defendant's guilt apart from the error, the importance of the improperly-admitted evidence, and whether the erroneously admitted evidence introduced new facts or was merely cumulative. *Id.* ¶ 43. In addition, we are mindful that "[w]here, as here, the improperly admitted evidence goes to the primary issue of credibility in a sexual abuse case, it is more likely to be prejudicial." *State v. Duran*, 2015-NMCA-015, ¶ 26, 343 P.3d 207.

**{33}**     In this case, the only direct evidence of the charged conduct came from J.K. who testified that, approximately seventeen years earlier, Defendant fondled her at night. After J.K.'s brief testimony on the charged conduct, the State then elicited from J.K. that Defendant, on several occasions, would also make her stroke his penis. Unlike J.K.'s recall of the charged conduct, which she repeatedly testified was "[j]ust a blur," J.K. remembered with specificity one of these uncharged incidents. The erroneously admitted evidence thus introduced a new and concrete set of facts into the trial—facts that were not merely cumulative of the charged conduct. Moreover, the State, in closing argument, emphasized the Rule 11-404(B) evidence, telling the jury that "it's something for you to consider for its lewd nature" and asserting that it served as corroboration. Importantly, at its core, this case came down to the jury making a credibility determination between Defendant and J.K. *See Marquez*, No. 35,818, mem. op. ¶ 12 ("[I]t seems abundantly clear that the verdict rendered in this case is fundamentally reflective of a credibility determination.").

**{34}**     Given the centrality of credibility in this case and the nature and emphasis placed on the erroneously admitted evidence, we conclude there is a reasonable probability the error affected the jury's verdict in this case. *See State v. Garcia*, 2019-NMCA-056, ¶ 16, 450 P.3d 418 ("Given the importance of credibility . . . , we have grave doubts concerning the fairness of the trial and conclude that the [erroneous] admission of [evidence] amounted to plain error that was not harmless."); *Duran*, 2015-NMCA-015, ¶ 24 (concluding the admission of improper testimony was harmful because, even though the testimony was only discussed briefly, "it was designed to lead the jury to . . . [make] an inference that would support [the v]ictim's credibility"); *see also State v. Lucero*, 1993-NMSC-064, ¶ 22, 116 N.M. 450, 863 P.2d 1071 (concluding the admission of improper testimony was harmful "[b]ecause credibility was a pivotal issue in [the] case, it is likely that the jury was swayed by [the] improper testimony"). The erroneous admission of the Rule 11-404(B) evidence was harmful and we accordingly reverse and remand for a new trial.

## III.     Defendant's Remaining Claims of Error

**{35}**     Having reversed Defendant's conviction on the Rule 11-404(B) issue, we do not reach his other claims of error. Specifically, Defendant's claims that (1) he was denied the right to an impartial jury because the district court excused a juror for cause after the

jury was sworn; (2) the State misled the jury regarding the reasonable doubt standard; and (3) he was denied the right to effective assistance of counsel are rendered moot by our reversal on other grounds. *See, e.g.*, *State v. Stanley*, 2001-NMSC-037, ¶ 44, 131 N.M. 368, 37 P.3d 85 ("In light of the reversal of the evidentiary issues, we do not review [the d]efendant's ineffective assistance of counsel claim or his issue dealing with the refusal of the trial court to hold a hearing on his motion for a new trial."). Defendant's remaining claims of error pertain to evidentiary and discovery matters. We decline to reach these issues because it is unlikely they will arise in the same manner on remand, and we avoid issuing advisory opinions. *See Santa Fe S. Ry., Inc. v. Baucis Ltd. Liab. Co.*, 1998-NMCA-002, ¶ 24, 124 N.M. 430, 952 P.2d 31 ("Our concern with issuing advisory opinions stems from the waste of judicial resources used to resolve hypothetical situations which may or may not arise.").

**CONCLUSION**

**{36}**   For the foregoing reasons, we reverse Defendant's conviction and remand for a new trial.

**{37}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**KRISTINA BOGARDUS, Judge**